**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
ROBERT A. WOOD,

                Plaintiff,

                                  **MEMORANDUM & ORDER**
      -v.-                           Civil Action No. 08-CV-4197

THE TOWN OF EAST HAMPTON, TODD H. SARRIS,
individually and in his official capacity, KEVIN SARLO,
individually and in his official capacity, MICHAEL SARLO,
individually and in his official capacity, THE VILLAGE OF
EAST HAMPTON, PAUL RICKENBACH, JR., individually
and in his official capacity, GERRARD LARSEN, JR.,
individually and in his official capacity, MICHAEL
TRACEY, individually and in his official capacity, RICHARD
H. SCHNEIDER, individually and in his official capacity, and
JULIO MARIO GALEANO, individually and in his official
capacity,

                Defendants.
------------------------------------------------------------------------X

APPEARANCES:

**LAW OFFICES OF STEVEN A. MORELLI, P.C.**
Attorneys for Plaintiff
One Old Country Road, Suite 347, Carle Place NY 11514
By:    Jaime L. Eckl, Esq.
       Steven A. Morelli, Esq.

**DEVITT SPELLMAN BARRETT, LLP**
Attorneys for Defendants (Village of East Hampton, Paul Rickenbach, Michael Tracey, Richard
Schneider, Julio Galeano)
50 Route 111, Smithtown NY 11787
By:    Jeltje deJong, Esq.

**AHMUTY, DEMERS & McMANUS, ESQS.**
Attorneys for Defendant (Gerrard Larsen)
200 I.U. Willets Road, Albertson NY 11507
By:    Robert J. Hindman, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Robert A. Wood seeks recovery for alleged violations of his constitutional rights under 42 U.S.C. §§ 1983, 1985 and 1986. Plaintiff also asserts New York state law causes of action for false arrest and imprisonment, malicious prosecution, and intentional infliction of emotional distress. Presently before the Court are: (1) a motion to dismiss filed by defendants Village of East Hampton (the "Village"), Paul Rickenbach, Jr. ("Rickenbach"), Michael Tracey ("Tracey"), Richard H. Schneider ("Schneider"), and Julio Mario Galeano ("Galeano") (collectively, the "Village Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6), and (2) a motion for judgment on the pleadings filed by defendant Gerrard Larsen, Jr. ("Larsen") pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons stated below, the motions are GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the Complaint and are presumed true for purposes of these motions.

The Town of East Hampton (the "Town"), which is also a named defendant in this action but is not a party to the present motions to dismiss, and the Village of East Hampton (the "Village") are "two separate municipal entities which share the same name." (Compl., Ex. A at 1.)[2] "Although the Village is geographically situated within the Town, each entity has its own

---

[1]     Larsen is represented by separate counsel and, because he previously interposed an Answer, moves separately for judgment on the pleadings under Rule 12(c). As a practical matter, however, Larsen essentially joins the Village Defendants' Rule 12(b)(6) motion to dismiss—indeed, Larsen's motion papers "adopt all of the arguments and statement[s] of facts set forth in" the Village Defendants' motion papers. (Def. Larsen's Mem. of Law at 2–3.)

[2]     The Court may properly rely on material attached to the Complaint when deciding the instant motions. "Pleadings," for purposes of a motion to dismiss under Rule 12(b)(6) or

system of government and maintains its own police force." (*Id.*) The Town hired Plaintiff as a police officer in 1985, promoted him to the rank of sergeant in February 2004, and assigned him to the position of patrol supervisor in April 2004. (Compl. ¶¶ 17, 22, 23.) Rickenbach was the mayor and a trustee of the Village. (*Id.* ¶ 11.) Larsen was the chief of police of the Village Police Department. (*Id.* ¶ 12.) Tracey and Schneider were the captain and lieutenant, respectively, of the Village Police Department. (*Id.* ¶¶ 13, 14.) Galeano was a police officer employed by the Village Police Department. (*Id.* ¶ 15.)

## I.     *Larsen's Relationship With Plaintiff's Wife*

In 2004 or 2005, Larsen began having an extramarital affair with Plaintiff's wife. (Compl. ¶¶ 12, 38.) Plaintiff alleges that, beginning in May 2005, Larsen began "to coach Wood's wife in the law and legal terminology for the purpose of buttressing her claims against Wood for their later use in divorce or child custody proceedings." (*Id.* ¶¶ 39, 47, 50.) In August 2005, Plaintiff's wife revealed the affair to Plaintiff and separated from him. (*Id.* ¶ 40.) Thereafter, Plaintiff frequently observed his wife and Larsen driving around in Larsen's police-issued, Village-owned Dodge Durango. (*Id.* ¶ 41.) Plaintiff submitted Freedom of Information Law ("FOIL") requests to the Village seeking Larsen's "duty charts" for the purpose of proving that Larsen was wasting taxpayer money by engaging in an extramarital affair "on Village time and at Village expense." (*Id.* ¶¶ 41, 43.) Initially, the Village produced Larsen's duty charts for the period between 2004 and 2006. (*Id.* ¶ 42.) Subsequently, however, Larsen told the Village

12(c) "include not just the four corners of the complaint, but also any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)) (internal quotation marks omitted); *see also Byrd v. City of New York*, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) (applying same rule on 12(c) motion for judgment on the pleadings).

to stop providing his duty charts to Plaintiff and, thereafter, the Village claimed that no further duty charts existed.  (*Id.*)  Plaintiff then wrote a letter to the Village Board of Elders "informing it of all the violations of the Village's rules and procedures that Larsen had engaged in" by using a police vehicle for personal purposes and failing to conduct himself in an "upright and moral manner."  (*Id.* ¶ 43.)

In December 2005, Plaintiff's wife filed for divorce.  (*Id.* ¶ 48.)  As part of the divorce proceedings, the New York Supreme Court for Suffolk County issued an order that required Larsen to "stay away from [Plaintiff's] wife when the children were present."  (*Id.*)  Thereafter, Plaintiff "frequently observed Larsen socializing with [Plaintiff's] wife while the children were present."  (*Id.* ¶ 49.)  Plaintiff wrote a letter to Rickenbach and the Village Board of Elders informing them that Larsen had violated the aforementioned court order.  (*Id.*)

On or about November 30, 2006, after vacating the marital premises pursuant to his pending divorce proceedings, Plaintiff returned to remove his personal belongings.  (*Id.* ¶ 51.)  Although Plaintiff's wife had previously agreed she would not be present while Plaintiff removed his belongings, she nonetheless "confronted" Plaintiff at the home.  (*Id.*)  Plaintiff's wife then called the Town police department and made false accusations of domestic violence against Plaintiff.  (*Id.* ¶ 52.)  Two Town police officers responded to the call.  (*Id.*)  In addition, Tracey and Larsen arrived in uniform and in Larsen's Dodge Durango despite the fact that the marital premises were outside the jurisdiction of the Village Police Department.  (*Id.* ¶ 53.)  According to Plaintiff, Tracey and Larsen responded to the scene with the "purpose of intimidating Wood, bolstering Wood's wife's claim, and using their rank as chief and captain of an adjoining agency to influence the responding officers from the Town."  (*Id.*)  No charges were

filed against Plaintiff as a result of the incident.  (*Id.* ¶ 54.)  Plaintiff later wrote a letter to Rickenbach "questioning why [Plaintiff] was being harassed by Larsen and members of the Village Police Department while they were outside of their jurisdiction not attending to any official police business."       (*Id.* ¶ 55.)  Plaintiff also filed FOIL requests for copies of Larsen's and Tracey's "reports relating to their police activity at his home."  (*Id.*)  The Village responded that no such reports existed.  (*Id.*)  "A subsequent check of Larsen's duty chart for that day showed him to be off duty on a personal day."  (*Id.*)

## II.     *Plaintiff's Arrest and Indictment*

Plaintiff alleges that the "Village Defendants had instituted a policy of harassing and surveilling persons of Hispanic origin under the guise of enforcing immigration and tax laws." (*Id.* ¶ 57.)  Plaintiff believed that the Village Defendants' true intent was to "remove residents . . . who were deemed . . . to be undesirable solely due to their ethnic background and socioeconomic status."  (*Id.*)  Plaintiff disagreed with "the Village and Larsen's policy of harassing Hispanic citizens under the color of law and the guise of a legal investigation." (*Id.* ¶ 58.)  On or about August 23, 2007, while off duty and walking in the Village, Plaintiff recognized Larsen's Dodge Durango parked on the street.  (*Id.* ¶ 59.)  Plaintiff approached two Hispanic men who were leaning on a fence nearby and "attempted to inform them that the Dodge Durango was the police."  (*Id.*)  However, the first "Hispanic man only spoke Spanish and did not understand what [Plaintiff] had said."  (*Id.*)  The second man translated what Plaintiff had said into Spanish for the first man.  (*Id.* ¶ 60.)  Although Plaintiff did not recognize him at the time, the second Hispanic man was Galeano who was working in the midst of an undercover police assignment.  (*Id.*)  Without identifying himself as a police officer, Galeano then walked

away from scene, concluding that "his cover 'was blown.'"  (*Id.*, Ex. A at 2.)

On August 24, 2007, "at Larsen's [and Tracey's] direction or with [their] tacit agreement," Galeano and Schneider "filed a Misdemeanor Information in the criminal court of the Village charging [Plaintiff] with a violation of New York Penal Law § 195.05, Obstructing Governmental Administration in the Second Degree."  (*Id.* ¶ 61.)  Plaintiff was charged with "intentionally obstruct[ing] and impair[ing] the administration of law . . . by interfering with an ongoing narcotics investigation/operation, by alerting potential targets/suspects of the investigation to the presence of undercover officers . . . by approaching said targets and stating 'The policia in the black vehicle down there' and turning his head to signal where the undercover vehicle . . . was parked."  (*Id.*)  Plaintiff alleges that although Galeano and Schneider made and approved the charges contained in the Misdemeanor Information under penalty of perjury, the information contained therein "was false to the extent that it was later conceded that the civilian present [whom Plaintiff attempted to warn regarding the presence of police] had n[ot] been identified as a target or suspect, any real suspect was not present at the scene, and other than the fact that he was Hispanic there was nothing to distinguish him even as a 'potential suspect.'" (*Id.* ¶ 62.)

On August 27, 2007, Plaintiff turned himself in.  (*Id.* ¶ 63.)  Plaintiff was "processed, photographed, fingerprinted and brought before the Village Court for arraignment whereupon he was released on his own recognizance."  (*Id.*)  Although an arrestee's "mug shot" is not generally released to the media, the Village Defendants gave Plaintiff's mug shot "to a local newspaper and asked that it be published . . . in order to cause [Plaintiff] embarrassment and emotional and psychological pain and suffering."  (*Id.* ¶ 64.)

In October 2007, the District Attorney presented the case to a grand jury. (*Id.* ¶ 65.) Galeano was the "People's main witness" and "testified under oath as to Wood's 'obstruction' with the Village's 'investigation.'" (*Id.*) The District Attorney succeeded in obtaining an indictment that charged Plaintiff with "one count of obstructing governmental administration in the second degree, NY Penal Law § 195.05, and two counts of official misconduct, NY Penal Law § 195.00." (*Id.* ¶ 66.) Plaintiff was "forced to retire from the Town Police Department effective November 30, 2007, as a result of the damage the defendants had caused to his reputation and career." (*Id.* ¶ 78.)

## III.    *The Dismissal of Plaintiff's Indictment*

On May 16, 2008, Plaintiff's indictment was dismissed by the County Court for Suffolk County "on Wood's motion based in part upon the fact that the indictment was obtained in violation of Wood's constitutional rights to a fair presentment of facts to the Grand Jury . . . ." (*Id.* ¶ 67.) Specifically, the Village did not turn over to the Suffolk County District Attorney "a substantial amount of evidence that Galeano's motive for bringing the [Misdemeanor] Information was to salvage his floundering career by having Larsen's well-known bitter enemy arrested . . . ." (*Id.* ¶ 68.)

Therefore, the Grand Jury did not hear the following information before it returned the indictment. On or about December 30, 2006, Galeano pulled over a vehicle in connection with a burglary investigation being conducted by the Village Police Department. (*Id.* ¶ 69.) Not only was the driver intoxicated, but the items stolen during the burglary were displayed in the vehicle in plain sight. (*Id.*) Galeano, however, recognized the driver as a friend and "[i]nstead of arresting the two men for any number of felonies they had committed, Galeano gave the two men

a ride home in his police car."  (*Id.*)  "When Galeano filled out his report regarding this incident, he did so falsely by characterizing what had occurred as a courtesy ride for a resident."  (*Id.*) Galeano subsequently lied to his superiors when directly questioned about the incident. (*Id.* ¶ 70.)  "When [ ] presented with sworn statements from the men and the mother of one of the men," Galeano admitted what he had done.  (*Id.*)  However, "instead of bringing Galeano up on formal charges, Larsen made the decision to issue 'command discipline' to Galeano . . . which consisted of the forfeiture of 30 days compensation, and being subject to 40 hours of supervised patrol training."  (*Id.* ¶ 71.)  "Essentially, from January 9, 2007, to the date of [Plaintiff]'s arrest, Galeano was serving at the pleasure of Larsen, who he had to thank for saving his job, but who could also terminate Galeano at any time for any minor violation."  (*Id.* ¶ 72.)  However, "[t]he Grand Jury was not presented with the above information relevant to Galeano's credibility as a witness because the Village deliberately hid this information from the District Attorney's Office prior to the presentment to the Grand Jury."  (*Id.* ¶ 73.)

Plaintiff's motion to have the indictment dismissed was based upon two grounds: (1) "the charges were not sustainable as a matter of law," and (2) "the presentment made to the Grand Jury violated Wood's constitutional rights in that the *Brady* material relating to Galeano's credibility was not presented to the Grand Jury" as described above.  (*Id.*)  The court "dismissed the indictment on the issue of the presentment made to the Grand Jury, but did not address the other grounds for Wood's motion as they were moot in light of the court's ruling."  (*Id.* ¶ 74.) Plaintiff's motion to dismiss the indictment was granted "with leave to resubmit."  (*Id.*, Ex. A at 7.)

**DISCUSSION**

I.     *Motion to Dismiss and Motion for Judgment on the Pleadings*

The Village Defendants contend that Plaintiff's Section 1983 claims under the First Amendment, Fourth Amendment, Fourteenth Amendment Equal Protection Clause, his claims pursuant to Sections 1985 and 1986, and his state law claims for false arrest, malicious prosecution, and intentional infliction of emotional distress all should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Village Defendants also assert that Tracey, Schneider, and Galeano are entitled to qualified immunity from Plaintiff's false arrest and malicious prosecution claims. Rickenbach argues that Plaintiff may not maintain any Section 1983 claims against him because Plaintiff has failed to allege his personal involvement in any alleged constitutional violation. Finally, the Village asserts that because Plaintiff has not alleged a viable Section 1983 claim against any individual police personnel, the *Monell* claim against the Village must be dismissed.

Larsen joins the Village Defendants' arguments and further asserts: (1) to the extent the Complaint contains a cause of action based upon "alienation of affections," such claim is no longer legally cognizable in New York State, and (2) Plaintiff has failed to state a claim against Larsen under federal or state law.

A.     *Legal Standard*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule

12(b)(6).[3]

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court

disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, to survive a motion

to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements
> of a cause of action will not do. Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even
> if doubtful in fact).

*Id*. at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court

provided further guidance, setting forth a two-pronged approach for courts deciding a motion to

dismiss. First, a court should "begin by identifying pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal

conclusions can provide the framework of a complaint, they must be supported by factual

assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by

---

[3] "In deciding a Rule 12(c) motion, [a court] appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6)." *Livant v. Clifton*, 272 Fed. Appx 113, 115 (2d Cir. 2008) (quoting *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 89 (2d Cir. 2006)); *see also Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) (same).

mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted).

The Village Defendants and Larsen advance several arguments as to why certain of Plaintiff's claims should be dismissed. The Court will address each of these arguments in turn.

**B.**    ***Causes of Action Pursuant to 42 U.S.C. § 1983 ("Section 1983")***

A plaintiff may assert a cause of action pursuant to Section 1983 against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42

U.S.C. § 1983 (2006). Because "Section 1983 'is not itself a source of substantive rights,' but

merely provides 'a method for vindicating federal rights elsewhere conferred' . . . [t]he first step

in [analyzing] any such claim is to identify the specific [federal] right allegedly infringed."

*Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted) (quoting *Baker v. McCollan*, 443

U.S. 137, 144 n.3 (1979)).

The Village Defendants and Larsen move to dismiss Plaintiff's: (1) First Amendment

retaliation and intimate association claims; (2) Fourth Amendment false arrest and malicious

prosecution claims; and (3) Fourteenth Amendment equal protection claim.[4]

### 1.    Plaintiff's First Amendment Retaliation Claim is Dismissed

The Complaint alleges that the Village Defendants and Larsen "while acting under color

of state law, retaliated against Plaintiff for . . . his exercise of his rights to speak freely on matters

of public concern . . . which are rights secured to Plaintiff by the First Amendment to the

Constitution of the United States." (Compl. ¶ 84.) In his motion papers, Plaintiff argues that he

exercised his First Amendment freedom of speech rights in the following three ways: (a) by

writing letters to the Village Board of Elders and Rickenbach; (b) by submitting FOIL requests

to the Village; and (c) by saying "the policia in the black vehicle down there" to two Hispanic

men after noticing that Larsen's Dodge Durango was parked nearby. (Pl.'s Opp'n Vill. at 13-

14.)[5] Plaintiff argues that the Village Defendants and Larsen retaliated against him by

---

[4]    The Village Defendants and Larsen have not moved to dismiss Plaintiff's
substantive due process claim or Sixth Amendment claim. (*See* Compl. ¶¶ 86, 88.) Accordingly,
the Court will not address those claims in this Memorandum and Order.

[5]    "Vill. Defs.' Mem." refers to the Village Defendants' Memorandum of Law in
Support of their Motion to Dismiss. "Pl.'s Opp'n Vill." refers to Plaintiff's Memorandum of

"harassing Plaintiff, failing to remedy Plaintiff's complaints, and eventually falsely arresting and maliciously prosecuting Plaintiff." (*Id.* at 14.)

The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). When the plaintiff is "a private citizen who sued a public official,"[6] the Second Circuit has required the plaintiff "to show: '(1) [the plaintiff] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'" *Williams*, 535 F.3d at 76 (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)) (alteration in the original); *see also Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (noting that a "private citizen" bringing a First Amendment retaliation claim must satisfy the three-pronged test set forth in *Curley*); *Butler v. City of Batavia*, 2009 WL 910194, at *1 (2d Cir. Apr. 6, 2009) (applying the *Curley* test); *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998) (same). In order to survive a motion to dismiss, a claim of retaliation under Section 1983 "must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" *Friedl v. City of New York*, 210 F.3d 79, 85-86 (quoting *Flaherty v.*

---

Law in Opposition to Defendant the Village of East Hampton's Motion to Dismiss. "Vill. Reply Mem." refers to the Village Defendants' Reply Memorandum of Law. "Larsen Mem." refers to Larsen's Memorandum of Law in Support of Motion for Judgment on the Pleadings. "Pl.'s Opp'n Larsen" refers to Plaintiff's Memorandum of Law in Opposition to Defendant Larsen's Motion to Dismiss. "Larsen Reply Mem." refers to Larsen's Reply Memorandum of Law.

[6] Because the Village Defendants and Larsen were not Plaintiff's employer, the Court does not look to the "legal standard governing retaliation claims lodged by public employees" against their employers here. *See Williams*, 535 F.3d at 76. Consequently, as against the Village Defendants and Larsen, Plaintiff's speech "need not have been on a matter of public concern for it to fall within the protection of the First Amendment." *Id.* at 77.

*Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *see also Eberling v. Town of Tuxedo*, 2006 WL 278246, at *2 (S.D.N.Y. Feb. 3, 2006) (same).

        a.      *Plaintiff Has Not Alleged Any Chilling Effect on His Speech*

Even if the Court were to assume that Plaintiff's speech, as described above, deserved protection under the First Amendment,[7] Plaintiff's retaliation claim still fails because Plaintiff has failed to allege that any actions taken by the Village Defendants or Larsen "effectively chilled the exercise of his First Amendment right." *Williams*, 535 F.3d at 76 (internal quotation marks omitted). An essential element of a Section 1983 claim, including a claim of retaliation in violation of the First Amendment, is that "some official action has caused the plaintiff to be deprived of his or her constitutional rights – in other words, there is an injury requirement to state the claim." *Id.* at 78 (quoting *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2000)) (internal quotation marks omitted). The Second Circuit has "explained that plaintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right." *Id.* (citing *Colombo*, 310 F.3d at 117). Therefore, "to properly allege a claim for First Amendment retaliation, a plaintiff must show that his First Amendment rights were 'actually chilled.'" *Balaber-Strauss v. Town/Vill. of Harrison*, 405 F. Supp. 2d 427, 433 (S.D.N.Y. 2005) (quoting *Curley*, 268 F.3d at 73) (internal quotation marks omitted).

Here, Plaintiff has not alleged that any conduct on the part of the Village Defendants or Larsen actually chilled the exercise of his First Amendment rights. In particular, the Complaint does not contain any factual allegations setting forth specific instances in which Plaintiff

---

[7]      Because Plaintiff has failed to allege that his First Amendment rights have actually been chilled, the Court need not address the parties' arguments regarding whether or not Plaintiff's speech was protected by the First Amendment.

"desired to exercise [his] First Amendment rights but was chilled by" the alleged conduct of the

Village Defendants or Larsen. *Mangano v. Cambariere*, 2007 WL 2846418, at *2 (S.D.N.Y.

Sept. 27, 2007); *see also Balaber-Strauss*, 405 F. Supp. 2d at 433 ("Allegations of a subjective

'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of

specific future harm.") (quoting *Curley*, 268 F.3d at 73) (internal quotation marks omitted).  To

the contrary, the Complaint avers that Plaintiff actually responded to at least one episode of

harassment by writing another complaint letter to Rickenbach and submitting additional FOIL

requests. (Compl. ¶ 55.)

Moreover, Plaintiff's arrest and subsequent indictment for Obstructing Governmental

Administration in the second degree are not a substitute for a showing of a chilling effect.  *See*

*Richardson v. New York City Health & Hosps. Corp.*, 2009 WL 804096, at *20 n.8 (S.D.N.Y.

Mar. 25, 2009).  In *Richardson*, the plaintiff alleged that she was arrested for harassment and

disorderly conduct in retaliation for her threat to report the arresting officer to his supervisor.  *Id.*

at *20.  The court rejected the plaintiff's assertion that "she need not show a chilling effect on

her speech because her arrest and the issuance of the summonses were a sufficient injury to

maintain a First Amendment Claim."  *Id.* at *20 n.8.  The court explained:

> In a claim for retaliation under the First Amendment, a plaintiff must
> demonstrate a First Amendment harm.  Where the retaliation claim
> is brought by a private citizen alleging that he or she was arrested in
> retaliation for criticizing public officials, the relevant First
> Amendment harm is a chilling effect on the arrestee's speech.  The
> absence of a chilling effect does not preclude other claims under
> [S]ection 1983 for, *inter alia*, excessive force, false arrest, or
> malicious prosecution, but it is fatal to this type of First Amendment
> claim.

*Id.* (internal citations omitted); *see also Griffin-Nolan v. Providence Washington Ins. Co.*, 2005

WL 1460424, at *9 (N.D.N.Y. June 20, 2005) (finding the plaintiff sufficiently alleged that his First Amendment rights were chilled when he alleged that after he engaged in First Amendment protected activity, he was threatened with arrest, and "Plaintiff stopped speaking to the officers").

Accordingly, Plaintiff's First Amendment retaliation claim against the Village Defendants and Larsen is dismissed.

### 2.    **Plaintiff's First Amendment Intimate Association Claim is Dismissed**

The Complaint avers that the Village Defendants and Larsen "while acting under color of state law, retaliated against Plaintiff for . . . having exercised his right to associate freely with his wife, which [is] secured to Plaintiff by the First Amendment to the Constitution of the United States." (Compl. ¶ 84.) The Village Defendants and Larsen argue that courts within the Second Circuit have "found a valid First Amendment intimate association claim existed only when the *conduct* of one spouse[ ] resulted in a retaliatory action against the other." (Vill. Defs.' Mem. at 10) (emphasis in the original). According to the Village Defendants and Larsen, because Plaintiff has failed to allege "conduct by [Plaintiff]'s spouse that would result in a retaliatory action against [Plaintiff]," his First Amendment right of intimate association claim must be dismissed. (*Id.*) Plaintiff does not address the Village Defendants' arguments regarding this claim.

Plaintiff does oppose, however, Larsen's contention that Plaintiff has attempted to set forth a legally untenable "alienation of affections" claim. (*See* Larsen Mem. at 4-6; Pl.'s Opp'n Larsen at 4.) Plaintiff states that "the facts and circumstances set forth in paragraphs 38 through 55 [of the Complaint], under the heading 'The Affair,' are merely background information

relevant to the claims against Defendant Larsen . . . ."  (Pl.'s Opp'n Larsen at 4.)

"The Supreme Court has recognized two types of associational rights: an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct."  *Econ. Opportunity Comm'n of Nassau Cnty., Inc. v. County of Nassau*, 106 F. Supp. 2d 433, 439 (E.D.N.Y. 2000) (citing *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999)).  The Second Circuit addressed the contours of an individual's right of intimate association in *Adler v. Pataki*, 185 F.3d 35.  There, the plaintiff alleged that his employment was unlawfully terminated in retaliation for a lawsuit filed by his wife against state officials.  The court held that "a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."  *Id.* at 44.  The plaintiff was permitted to proceed with his right of intimate association claim that challenged state conduct which "seeks to penalize him with the loss of his job because of its displeasure with the conduct of his wife."  *Id.*; *see also Berrios v. State Univ. of N.Y. at Stony Brook*, 518 F. Supp. 2d 409, 417 (E.D.N.Y. 2007) ("The right of intimate association has been described the Supreme Court as a right that protects intimate 'highly personal relationships' . . . from state intrusion . . . .") (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 619 (1984)).

Here, Plaintiff has not alleged that the Village Defendants or Larsen took any action against him in retaliation for his ex-wife's First Amendment-protected conduct.  Indeed, the Court questions whether separated or divorced spouses would be considered to be part of an "intimate association" subject to First Amendment protection in the first instance.  *See Berrios*,

518 F. Supp. 2d at 418 ("Factors including cohabitation . . . are considered when determining whether a relationship is protected by the First Amendment.").

Accordingly, Plaintiff's First Amendment intimate association claim is dismissed.

**3.      Defendants' Motion to Dismiss Plaintiff's Fourth Amendment False Arrest Claim is Denied**

a.      *Legal Standard*

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). "The common law tort of false arrest is a species of false imprisonment . . . [and] [u]nder New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Singer*, 63 F.3d at 118 (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).

"The Second Circuit has established that 'the existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.'" *Middleton v. City of New York*, 2006 WL 1720400, at *3 (E.D.N.Y. June 19, 2006) (quoting *Weyant*, 101 F.3d at 852) (internal quotation marks and alteration omitted). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852 (citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979)). "The validity of an arrest does not

depend upon an ultimate finding of guilt or innocence," and therefore "the court looks only to the information that the arresting officer had at the time of the arrest." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998). "[O]n a motion to dismiss, the question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Middleton*, 2006 WL 1720400, at *3 (quoting *Weyant*, 101 F.3d at 852) (internal quotation marks and alteration omitted). The Court is mindful, however, that often "the facts surrounding the arrest are not yet available to the Court at [the] pre-discovery stage of the litigation" and the question of whether probable cause existed cannot be resolved on a motion to dismiss. *See Kirton v. Hassel*, 1998 WL 146701, at *4 (E.D.N.Y. Mar. 25, 1998).

   b.  *The Parties' Contentions*

  The Village Defendants and Larsen argue that the facts alleged in the Complaint are sufficient to establish that probable cause existed as a matter of law. (Vill. Defs.' Mem. at 5.) Specifically, the Village Defendants and Larsen assert that on August 23, 2007:

> Plaintiff, a police officer from another jurisdiction, walked up to two Hispanic individuals and warned them about the undercover police vehicle during a surveillance. One of the Hispanic individuals was undercover officer GALEANO who witnessed WOOD's conduct and who swore to the misdemeanor information. These facts alone, establish probable cause for WOOD's arrest. Furthermore, WOOD's complaint specifically supports his arrest, because it clearly states that he disagreed with the VILLAGE's harassment of Hispanic citizens under the guise of a legal investigation and that he attempted to inform the Hispanic individuals "that the Dodge Durango was the police."

(*Id.*)

  In opposition, Plaintiff contends that, based upon the facts alleged in the Complaint, this

Court cannot determine that probable cause existed as a matter of law for several reasons. First, Plaintiff argues the Hispanic civilian whom Plaintiff allegedly tried to warn "was not identified [by the Village Police Department] as a target, suspect or even a potential suspect," and "[t]his information was certainly available to Defendants prior to [effecting] Plaintiff's arrest . . . ." (Pl.'s Opp'n Vill. at 10.) Second, Plaintiff asserts that because the civilian to whom Plaintiff spoke did not understand English, Plaintiff "could not have 'obstructed' any sort of investigation because he did not 'alert' the Hispanic man of an investigation" – it was only when Galeano translated Plaintiff's statement that the civilian learned of the police presence. (*Id.*) In reply, the Village Defendants and Larsen argue that Plaintiff's position is "unavailing because Penal Law § 195.05 focuses on the perpetrator's intent, rather than [ ] the eventual effect of his actions." (Vill. Reply Mem. at 2.)

        c.    *Analysis*

New York Penal Law § 195.05 provides:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration.

N.Y. Penal Law § 195.05 (McKinney 1998). Because the Village Defendants and Larsen do not argue that Plaintiff's statement during the August 23, 2007 incident constituted "intimidation," or an "independently unlawful act," and because neither interference with "radio, telephone,

television or other telecommunications systems" nor release of "a dangerous animal" is alleged here, the only remaining question is whether there was probable cause to arrest Plaintiff for obstructing the undercover operation "by means of . . . physical force or interference."  N.Y. Penal Law § 195.05.

In an early case interpreting this statute, the New York Court of Appeals held that a "CB radio message from one motor vehicle to another as to the highway location of a radar speed checkpoint does not constitute the crime of obstructing governmental administration."  *People v. Case*, 42 N.Y.2d 98, 99 (1977).  The Court of Appeals found that, under the statute, "physical" modifies both "force" and "interference," and so "mere words alone do not constitute 'physical force or interference' such as to support the charge of obstructing governmental administration." *Id.* at 102.  "Under the express provisions of the statute, the interference would have to be, in part at least, physical in nature."  *Id.*; *see also People v. Hinkson*, 184 Misc. 2d 496, 499 (N.Y.C. Crim. Ct. Kings County 2000) (finding no violation of the statute when the defendant publicly identified an undercover officer; there was no allegation that there was a specific, "confined and defined" undercover operation, that the defendant knew of the operation, that he "directed his warnings towards a known criminal activity," or that his conduct resulted in any "physical action or dispersal") (quoting *In re Davan L.*, 91 N.Y.2d 88, 91 (1997)); *People v. Lopez*, 97 Misc. 2d 124, 125 (N.Y.C. Crim. Ct. Bronx County 1978) (finding no statutory violation when the defendant "repeatedly" shouted to the public at large that a plainclothes anti-crime patrolman was a police officer, even though this "vocal disclosure" blew the officer's cover and disrupted his surveillance operation).

Two subsequent decisions distinguishing *People v. Case* are instructive here.  First, in *In*

*re Davan L.*, 91 N.Y.2d 88 (1997), the New York Court of Appeals found a "juvenile's interrelated conduct—actions coupled with words" sufficient to "satisfy the 'physical' component under Penal Law § 195.05" under the following circumstances:

> [T]he police were conducting an undercover narcotics "buy operation" at a storefront in Jamaica, Queens. An officer observed the respondent juvenile at a nearby corner slowly and repeatedly circling the block on his bicycle . . . . Another officer of the undercover team, wearing plain clothes, displayed his badge, approached and identified himself to the juvenile. The officer urged the youngster not to get involved, not to return near the store, and to depart in the opposite direction. The 15-year-old, nonetheless, turned his bicycle around and entered the identified zone. Pedaling past the front of the store, he yelled "cops, cops . . . watch out, Five-0, police are coming."

*In re Davan L.*, 91 N.Y.2d at 90. The Court of Appeals reiterated its holding in *People v. Case* that "purely verbal interference may not satisfy the 'physical' component under Penal Law § 195.05." *Id.* at 91. The Court found the case before it "readily distinguishable from *Case*," however, for the following reasons:

> The police activity area was confined and defined, and the juvenile was put on specific, direct notice. There was evidence that he intentionally intruded himself into the specific area of police activity and directed his warnings toward a known criminal activity and assembly at the location identified to the juvenile by the police officer. There was also evidence that the juvenile caused a physical reaction and dispersal, escalating his conduct into an even more serious physical obstruction of governmental administration, under a plain reading and application of Penal Law § 195.05.

*Id.* The Court of Appeals concluded that its analysis was "a relatively standard application of evidence under the statute that breaks no new interpretive ground." *Id.* at 92.

In *People v. Covington*, the defendant was charged with Obstructing Governmental Administration in the second degree in connection with his conduct at the scene of a police drug

22

raid. 18 A.D.3d 65, 65 (1st Dep't 2005). In that case, approximately 20 officers (some in uniform, and some in plainclothes displaying their shields and wearing jackets with "NYPD" patches) entered and secured a building to execute a search warrant. *Id.* The defendant, upon seeing the officers (who were described by bystanders as appearing to be a "SWAT" team), "cupped his hand around his mouth, in order to amplify his voice, and began yelling 'the police are coming' toward the building." *Id.* at 66. The court, relying on the principles set forth in *In re Davan L.*, found that the defendant had committed the crime of Obstructing Governmental Administration in the second degree even though the police had not directed any specific warning to him. *Id.* at 71 ("[T]he holding of the Court of Appeals in *Davan L.* does not create a bright-line rule which would preclude criminal liability under Penal Law § 195.05 for lack of such notice."). The court found that the defendant "interjected himself into an obvious, defined area of police activity" and "directed his warnings from immediately in front of the building . . . toward an area of known criminal activity, i.e., the targeted apartment . . . ." *Id.*

Having considered this case law and accepting as true Plaintiff's allegations as pled in the Complaint, as the Court must on a motion to dismiss, the Court cannot find as matter of law that probable cause existed for Plaintiff's arrest for Obstructing Governmental Administration in the second degree. The Complaint alleges that Plaintiff, while off duty and walking down a Village sidewalk, recognized Larsen's Dodge Durango. He approached two Hispanic individuals who were leaning on a fence against the sidewalk and "attempted to inform them that the Dodge Durango was the police." (Compl. ¶ 59.) Specifically, according to the record before the Court, Plaintiff said "'Policia, over there in the black car' and motioned towards [Larsen's] vehicle." (*Id.*, Ex. A at 2.) Plaintiff did not know that one of the Hispanic men was, in fact, undercover

Village Police Officer Galeano.  (*Id.* ¶ 60.)  When the civilian Hispanic man, who did not speak English, asked Galeano what Plaintiff had said, Galeano provided a verbatim translation of Plaintiff's statement.  (*Id.*)  The civilian Hispanic man's response was:  "We're not doing anything wrong.  We're just standing here."  (*Id.*, Ex. A at 2.)  Immediately after this statement, Galeano, "without identifying himself, walked away from the scene and the narcotics operation was cancelled."  (*Id.*)

In his order dismissing Plaintiff's indictment, Acting County Court Judge Martin I. Efman, after reviewing the Grand Jury testimony, provided further background information regarding the undercover operation.[8]  During the relevant time period, the Village Police Department was conducting an "ongoing undercover operation to identify citizens and companies engaged in the illegal hiring of undocumented workers."  (Compl., Ex. A at 2.)  The day before Plaintiff's arrest, Galeano, while working undercover in this regard, was approached by an individual who offered to sell him illegal narcotics.  (*Id.*)  Therefore, on the day of Plaintiff's arrest, Galeano "was reassigned to the same location for the purpose of soliciting drugs from the same individual."  (*Id.*)  The individual did not appear before or during the incident involving Plaintiff.  (*See id.*)

Here, there is no indication on the record that Plaintiff had any knowledge that the Village Police Department was conducting an undercover narcotics operation.[9]  At most, the

---

[8]      Judge Efman's May 16, 2008 order dismissing the indictment against Plaintiff was attached to the Complaint as Exhibit A and is properly before the Court on these motions because it attached to the Complaint.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d. Cir. 2002); *see also* footnote 2, *supra*.

[9]      Indeed, according to Judge Efman's decision, the turn of the undercover operation towards a narcotics investigation came as a surprise to the Village Police Department itself.

Complaint avers that Plaintiff disagreed with the Village Defendants' "policy of harassing and surveilling persons of Hispanic origin under the guise of enforcing immigration and tax laws." (Compl. ¶¶ 57-58.) There is no allegation that anyone or anything effectively defined this particular area of the public sidewalk as an area of police activity, and Plaintiff had received no advanced warnings of that nature. Plaintiff's statement was not directed toward a known area of criminal activity, as was the case in *In re Davan L.*, 91 N.Y.2d at 90, or *Covington*, 18 A.D.3d at 65-66. Plaintiff's conduct here is more akin to the conduct of the plaintiff in *Hinkson*, 184 Misc. 2d at 499, or *Lopez*, 97 Misc. 2d at 125, in that he simply warned two individuals standing on a public sidewalk that the police were present. Finally, unlike in *In re Davan L*, 91 N.Y.2d at 90, Plaintiff's statement did not cause a "physical reaction and dispersal" of anyone other than Galeano who concluded, on his own, that his cover had been blown.

Considering the relevant case law, and after reviewing the factual allegations set forth in the Complaint, it appears that Plaintiff engaged in "purely verbal interference" which could not, on its own, "satisfy the 'physical' component under Penal Law § 195.05." *Id.* at 91. Accordingly, the Court cannot conclude that, as a matter of law, the Village Police Department had probable cause to arrest Plaintiff for the misdemeanor of Obstructing Governmental Administration in the second degree.

Therefore, that portion of the Village Defendants' and Larsen's motion seeking the dismissal of Plaintiff's Fourth Amendment false arrest claim is denied.[10]

---

[10] Plaintiff has also asserted a cause of action for false arrest under New York common law. This claim is addressed in Section I.E, *infra*.

### 4.    Plaintiff's Malicious Prosecution Claims[11] Are Dismissed

"To state a claim for the tort of malicious prosecution under New York law, a plaintiff must prove: '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Garrett v. Port Auth. of N.Y. & N.J.*, 2006 WL 2266298, at *4 (S.D.N.Y. Aug. 8, 2006) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)); *see also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999) (setting forth elements). "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citation omitted) (citing *Murphy*, 118 F.3d at 944). "For the constitutional element, plaintiff must show a seizure or other 'perversion of proper legal procedures' implicating the plaintiff's personal liberty and privacy interests under the Fourth Amendment." *Garrett*, 2006 WL 2266298, at *6 (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

The Village Defendants and Larsen argue that Plaintiff has not adequately alleged the

---

[11]    Although Plaintiff's opposition papers imply that he has brought a claim for malicious prosecution pursuant to both Section 1983 and New York state law (*see* Pl.'s Opp'n at 11), the Court is not so convinced. While the Complaint clearly sets forth a state law cause of action for malicious prosecution (*see* Compl. ¶¶ 97-98), it is not evident whether Plaintiff has also alleged a claim of malicious prosecution under the Fourth Amendment. *Cf. Ambrose v. City of New York*, 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. 2009) (noting that a plaintiff's allegations of malicious prosecution "state a claim *only* under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment." The Village Defendants and Larsen do not address the issue. Drawing all inferences in favor of the Plaintiff, the Court will read the Complaint as asserting a malicious prosecution claim under Section 1983 claim. For the reasons set forth *infra*, however, any purported malicious prosecution claim brought under either Section 1983 or New York common law is dismissed on the merits.

final element of a malicious prosecution claim.  In particular, the Village Defendants and Larsen

assert that "the procedural dismissal of the plaintiff's indictment is not a 'termination on the

merits in favor of the accused,'" because a "prosecution is only deemed to end in favor of the

accused if it results in an acquittal or if the final disposition is in some way indicative of the

innocence of the accused."  (Vill. Reply Mem. at 3.)  In opposition, Plaintiff asserts that the

"County Court . . . dismissed the indictment based upon the fact that the indictment was obtained

in violation of Plaintiff's constitutional rights."  (Pl.'s Opp'n Vill. at 12.)  Plaintiff further

contends that "[t]he fact that the Court dismissed the indictment with leave to resubmit is

irrelevant."  (*Id.*)

The Second Circuit has recognized that district courts analyzing the favorable

termination element of malicious prosecution claims "'have reached varying results that are

difficult to reconcile.'"  *O'Brien v. Alexander*, 101 F.3d 1479, 1486 (2d Cir. 1996) (quoting

*Lopez v. City of New York*, 901 F. Supp. 684, 688 (S.D.N.Y. 1995)).  Courts within the Circuit,

however, appear to agree that the "existence of a favorable termination is determined in

accordance with applicable state law."  *Neal v. Fitzpatrick*, 250 F. Supp. 2d 153, 154 (E.D.N.Y.

2003) (citing *Hygh v. Jacobs*, 961 F.2d 359, 367 (2d Cir. 1992)); *see also O'Brien*, 101 F.3d at

1486 ("Still, our duty is to ascertain what is the law of New York."); *McCray v. City of New

York*, 2007 WL 4352748, at *21 (S.D.N.Y. Dec. 11, 2007) ("A plaintiff alleging the

constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish

termination of the prosecution in his favor *in accordance with applicable state law*.") (internal

quotation marks omitted).

"As a general rule, under the common law any final termination of a criminal proceeding

in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000); *see also Cantalino v. Danner*, 96 N.Y.2d 391, 408 (2001) (reiterating legal standard). The Court of Appeals has specifically "rejected the notion that the termination must affirmatively demonstrate the accused's innocence . . . ." *Cantalino*, 96 N.Y.2d at 408. However, the Court of Appeals has ruled that "dispositions inconsistent with innocence . . . cannot be viewed as favorable to the accused." *Smith-Hunter*, 95 N.Y.2d at 199. For example, a termination of proceedings will not be considered favorable when the "prosecution fails to go forward because of misconduct by the accused preventing a proper trial," "if a prosecution ends because of a compromise with the accused," or "if charges are dismissed out of mercy, since mercy presupposes the guilt of the accused." *Cantalino*, 96 N.Y.2d at 408.

Under this standard, a plaintiff attempting to sustain a claim for malicious prosecution must show, as a threshold matter, that "the criminal proceeding was *finally* terminated." *Smith-Hunter*, 95 N.Y.2d at 197. "[A]ny disposition of the criminal action which does not terminate it but permits it to be renewed . . . cannot serve as a foundation for the malicious prosecution action." *Id.* (internal quotation marks and alteration omitted). "A dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents the formal abandonment of the proceedings by the public prosecutor, for instance, by the entry of a *nolle prosequi*." *Id.* at 198 (internal quotation marks omitted). When, however, charges are simply dismissed without prejudice and "there [is] no indication that the prosecutor abandoned charges against the accused," the dismissal cannot be considered final and cannot support a malicious prosecution claim. *See id.*

In *MacFawn v. Kresler*, 88 N.Y.2d 859, 860 (1996), for example, the criminal information "was dismissed by the court because it concluded that the facts alleged by the People were not legally sufficient to support the charge." The Court of Appeals noted that the prosecution was "at liberty to amend the information to correct the deficiency but did not do so," and they did not "refile the charge as they could have." *Id.* The Court of Appeals held that because the dismissal was not final, it could not constitute a "favorable termination," and the plaintiff's cause of action for malicious prosecution was dismissed. *See also Garrett*, 2006 WL 2266298, at *5-6 (finding favorable termination element lacking when the criminal action was dismissed "based on legal insufficiency of the summons" and there was no evidence that the dismissal was with prejudice or that "the charge could not have been re-filed").

Here, the indictment against Plaintiff was dismissed "with leave to resubmit." (Compl., Ex. A at 7.) Judge Efman granted the motion to dismiss the indictment based solely upon the government's *Brady* violations and did not address Plaintiff's remaining contentions regarding the merits of the case. (*Id.*) Based upon the record before it, therefore, the Court cannot conclude that the criminal proceeding against Plaintiff was "finally terminated," and, therefore, Plaintiff has failed to allege all of the elements necessary to support a malicious prosecution claim. Moreover, Plaintiff has presented no authority to support his contention that "[t]he fact that the Court dismissed the indictment with leave to resubmit is irrelevant." (Pl.'s Opp'n Vill. at 12.)

Accordingly, Plaintiff's malicious prosecution claims are dismissed.[12]

---

[12] Because the Court has determined that Plaintiff has not sufficiently alleged the "favorable termination" element of a malicious prosecution claim, it need not address the parties' arguments regarding the existence of probable cause to commence the criminal proceeding.

**5.** **Larsen, Tracey, Schneider, and Galeano Are Not Entitled to Qualified Immunity from Plaintiff's False Arrest Claim**

    a. *The Parties' Contentions*

The Village Defendants assert that Tracey, Schneider and Galeano are entitled to qualified immunity from Plaintiff's false arrest and malicious prosecution claims. (Vill. Defs.' Mem. at 12.) The Court also assumes that Larsen contends that he is entitled to qualified immunity, because he is alleged to have been involved in the filing of the Misdemeanor Information to the same extent as Tracey, and Larsen has adopted all of the legal arguments advanced on behalf of the Village Defendants. (*See* Larsen Mem. at 2.) Because Plaintiff's malicious prosecution claims have been dismissed, the Court need only address the qualified immunity issue with respect to Plaintiff's false arrest claim. For the reasons set forth below, the Court finds that the Complaint (and the document attached thereto) do not provide a sufficient basis for the Court to determine that Larsen, Tracey, Schneider and Galeano are entitled to qualified immunity from Plaintiff's false arrest claim.

The Village Defendants assert that Galeano is entitled to qualified immunity from Plaintiff's false arrest claim because "it was objectively reasonable for [him] to execute the misdemeanor information." (Vill. Defs.' Mem. at 11.) The Village Defendants further contend that the Complaint does not contain any "specific allegations" against Tracey and Schneider, who acted as Galeano's "supervisors, not arresting officers." (*Id.*) Moreover, according to the Village Defendants, even if Tracey and Schneider "were in fact involved as supervisors" in the decision to arrest Plaintiff, "they were objectively reasonable in approving and allowing the filing of the misdemeanor information." (*Id.* at 11-12.) As noted above, Larsen had asked the Court to adopt all arguments advanced on behalf of the Village Defendants. (Larsen Mem. at 2.)

In opposition, Plaintiff contends that Tracey, Schneider, and Galeano (and, presumably, Larsen) "are not entitled to qualified immunity from liability because it is reasonable to believe that Defendants knew their harassing conduct towards Plaintiff in arriving at his home, falsely arresting Plaintiff, and testifying to false information which contributed to Plaintiff's malicious prosecution, was all in violation of Plaintiff's constitutional rights."  (Pl.'s Opp'n Vill. at 21.) The Village Defendants reply that Plaintiff's rights were not violated and, in fact, "plaintiff did not have a clearly established right to interfere with an undercover police operation."  (Vill. Reply Mem. at 7.)

         b.    *Legal Standard*

"When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such suit 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Middleton v. City of New York*, 2006 WL 1720400, at *11 (E.D.N.Y. June 19, 2006) (quoting *Posr*, 180 F.3d at 416)).[13]  This standard has been defined by the Second Circuit as "arguable probable cause," and described as follows:

---

[13]      "A suit against an officer is his official capacity is essentially a suit against the government entity itself."  *Obilo v. City Univ. of City of N.Y.*, 2003 WL 1809471, at *12 (E.D.N.Y. Apr. 7, 2003) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691, n.55 (1978)). Accordingly, Plaintiff's claims against Larsen, Tracy, Schneider, and Galeano in their official capacities for false arrest under Section 1983 are, essentially, claims against the Village.  *See id.*; *see also Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 153 n.2 (S.D.N.Y. 2006) ("Qualified immunity is, of course, a defense afforded only to individuals – not municipalities or municipal agencies – acting under color of state law who are sued for federal constitutional violations pursuant to 42 U.S.C. § 1983.").  Plaintiff's claims against the Village will be addressed in Section I.B.8, *infra*.

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997)) (internal citation, quotation marks, and alteration omitted).

"Therefore, the question at this juncture is whether it was objectively reasonable for the individual defendants to believe that probable cause existed to arrest plaintiff, or whether officers of a reasonable competence could disagree as to the existence of probable cause." *Middleton*, 2006 WL 1720400, at *11; *see also Posr*, 180 F.3d at 416 ("Qualified immunity from suit for false arrest is in part, therefore, a matter of second-order reasonableness: an officer is immune from suit if it was *reasonable* for him to believe, *reasonably*, that the plaintiff was breaking the law.").

c.    *Analysis*

At this stage of the litigation, assuming the veracity of the factual allegations in the Complaint, the Court cannot conclude that Larsen, Tracey, Schneider, and Galeano are entitled to the protection of qualified immunity from Plaintiff's false arrest claim. If Plaintiff could prove the facts alleged in the Complaint regarding the circumstances that preceded his arrest, no reasonable police officer would have determined that probable cause existed to arrest Plaintiff for the misdemeanor of Obstructing Governmental Administration in the second degree. (*See*

Section I.B.3, *supra*.)  Plaintiff has alleged that Galeano set forth the basis for the Misdemeanor Information "under penalty of law," and that Schneider reviewed and approved those statements "under penalty of law."  (Compl. ¶ 62.)  Moreover, Plaintiff alleges that Larsen and Tracey directed and/or agreed that the Misdemeanor Information should be filed.  (*Id.* ¶ 61.)  "[T]he presently known facts leave the reasonableness of the officers' actions in question."  *Williams*, 428 F. Supp. 2d at 156.

Therefore, the Village Defendants' and Larsen's motion to dismiss Plaintiff's false arrest claim on the grounds that Larsen, Tracey, Schneider, and Galeano are entitled to qualified immunity is denied.

## 6. Plaintiff's Fourteenth Amendment Equal Protection Claim is Dismissed

### a. *Legal Standard*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  A plaintiff may plead an equal protection claim under two possible theories.  *See Cobb v. Pozzi*, 363 F.3d 89, 109-110 (2d Cir. 2004) (noting the difference between "selective prosecution" equal protection claims and "class of one" equal protection claims); *African Trade & Info Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362-63 (2d Cir. 2002) (same).

First, a plaintiff may state an equal protection claim based upon selective enforcement of the law by pleading that: "(1) [he was] 'treated differently from other similarly situated' individuals and (2) this 'differential treatment was based on impermissible considerations such

as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Butler v. City of Batavia*, 2009 WL 910194, at *1 (2d Cir. Apr. 6, 2009) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)); *Mattison v. Black Point Beach Club Ass'n*, 2010 WL 1838705, at *1 (2d Cir. May 10, 2010) (summary order).

In the alternative, "failing proof of selective treatment based on impermissible considerations," Plaintiff must plead a "class of one" equal protection claim. *See Everitt v. DeMarco*, 704 F. Supp. 2d 122, 135 (D. Conn. 2010). "The Supreme Court has 'recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

        b.        *Plaintiff is asserting a "selective enforcement" equal protection claim, and not a "class of one" equal protection claim*

The Complaint avers that the Village Defendants "selectively prosecuted Plaintiff, compared to those similarly situated . . . in bad faith and with a malicious intent to injure Plaintiff in his personal and professional life." (Compl. ¶ 85.) Additionally, Plaintiff contends in his opposition papers that he has sufficiently alleged that this "selective treatment was based on Defendants' intent to inhibit or punish Plaintiff's exercise of his constitutional rights to freedom of speech, and/or was done maliciously and/or in bad faith [with] intent to injur[e] Plaintiff." (Pl.'s Opp'n Vill. at 17.) The Village Defendants assume that "[b]ecause plaintiff is

not a member of a protected class, he is only entitled to relief if he can establish 'class of one' status." (Vill. Reply Mem. at 6.) After reviewing the Complaint and the parties' papers, the Court finds that Plaintiff is attempting to assert a "selective enforcement" equal protection claim. Although Plaintiff does not attempt to rebut the Village Defendants' assumption that he is asserting a "class of one" equal protection claim, the Court finds that the Complaint cannot fairly be read to encompass such a legal theory.[14]

        c.     *Plaintiff has not alleged that "similarly situated" individuals were treated differently*

"A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated." *Church of the Am. Knights of the KKK v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004). The Village Defendants contend that Plaintiff "cannot show any evidence of any similarly situated individual who received preferable treatment from the VILLAGE police, under substantially similar circumstances, particularly to the high degree of similarity that the Second Circuit demands of 'Class of One' plaintiffs." (Vill. Defs.' Mem. at 13-14.) In opposition, Plaintiff asserts that he was similarly situated to Galeano and argues that "Plaintiff was selectively treated because he was the only person prosecuted for so-called Obstructing Governmental Administration in the Second Degree, while Defendant Galeano was not prosecuted for more serious criminal conduct including falsification of police records or his involvement in the August 2007 incident and prior criminal conduct." (Pl.'s Opp'n Vill. at 16-17.) According to the Village Defendants, however, "Plaintiff's attempt . . . to compare himself to defendant Galeano" fails because "their

---

[14]     Even if the Complaint could be read as asserting a "class of one" equal protection claim, that claim would fail for the reasons set forth below.

circumstances widely differ in various, obvious respects." (Vill. Reply Mem. at 6.) Specifically, the Village Defendants argue that Galeano: (1) "was involved in completely different misconduct which had different elements and standards of proof," (2) "was a member of a different police agency which had different rules and regulations with respect to officer misconduct," and (3) "unlike [Plaintiff], was on duty at the time the alleged misconduct took place." (*Id.*)

There appears to be some disagreement within the Circuit as to the definition of "similarly situated" in "selective enforcement," as opposed to "class of one," equal protection claims. *See Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 n.9 (E.D.N.Y. 2008). Some district courts have stated that "the standard for 'similarly situated' when bringing a selective enforcement claim is the same as in a 'class of one' claim." *Dones v. City of New York*, 2008 WL 2742108, at *7 (S.D.N.Y. July 9, 2008); *see also Kamholtz v. Yates County*, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) ("The similarly situated standard here [in the context of a selective enforcement claim] is the same as that for [ ] class-of-one claims."), *aff'd* 350 Fed. Appx 589 (2d Cir. 2009); *Spanierman v. Hughes*, 576 F. Supp. 2d 292, 307 (D. Conn. 2008) (same). Thus, these courts have required plaintiffs asserting either "class of one" or "selective enforcement" equal protection claims to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *See Ruston*, 610 F.3d at 59 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)) (internal quotation marks and alteration omitted). Specifically, such plaintiffs must "establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and

(ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* at 59-60 (quoting *Clubside, Inc.*, 468 F.3d at 159) (internal quotation marks omitted). "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are prima facie identical." *Kamholtz*, 2008 WL 5114964, at *5 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)) (internal quotation marks omitted).

At least one other district court, however, has "employ[ed] the slightly different formulations set forth by the Second Circuit for each [type of] claim." *Vassallo*, 591 F. Supp. 2d at 184 n.9. The *Vassallo* court applied the *Ruston* definition to a class-of-one claim, and then examined whether the plaintiff and his comparators were "similarly situated in all material respects" in its analysis of the selective enforcement claim. *Id.* at 184 (quoting *Sebold v. City of Middletown*, 2007 WL 2782527, at *26 (D. Conn. Sept. 21, 2007)) (internal quotation marks omitted). Another district court within the Circuit has stated that "[t]he test for determining whether persons similarly situated were selectively treated is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent." *Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001) (quoting *Penlyn Dev. Corp. v. Inc. Vill. of Lloyd Harbor*, 51 F. Supp. 2d 255, 264 (E.D.N.Y. 1999)). "Exact correlation is neither likely nor necessary, but the cases must be fair congeners. . . . [a]pples should be compared to apples." *Penlyn Dev. Corp.*, 51 F. Supp. 2d at 264.

The Court need not resolve this disagreement because, under any of the standards articulated above, Plaintiff has failed to allege that he was "similarly situated" to Galeano. Plaintiff was arrested and prosecuted for the misdemeanor of Obstructing Governmental

Administration in the second degree, in violation of New York Penal Law § 195.05. (*See* Compl. ¶ 61.) As the Village Defendants point out, Galeano allegedly engaged in conduct that could have constituted the separate crime of "Official Misconduct," an offense that has "different elements and standard of proof" than the misdemeanor with which Plaintiff was charged. (*See* Vill. Reply Mem. at 6.) The conduct for which Plaintiff was arrested occurred while Plaintiff was off-duty and acting in his capacity as a civilian. (*See* Compl. ¶ 59.) Galeano's alleged misconduct occurred while he was on-duty, investigating a burglary, and, subsequently, while he was being questioned by his superiors. (*Id.* ¶¶ 69, 70.) Tracey and Larsen, who made the ultimate decision to issue Galeano a "command discipline" in lieu of formal charges, were acting in the capacity of Galeano's employer/supervisor. (*Id.* ¶ 71.) Plaintiff has never been employed by any of the Village Defendants who made the decision to arrest or prosecute him.

Based on the factual allegations contained in the Complaint, the Court cannot find that Plaintiff was similarly situated to Galeano under any standard articulated by courts within this Circuit. The conduct of Plaintiff and Galeano cannot be construed as "roughly equivalent" or similar in all material aspects. The Complaint certainly does not contain allegations supporting an "extremely high degree of similarity" between Plaintiff and Galeano. *See Ruston*, 610 F.3d at 59. Moreover, Plaintiff has not identified any other similarly situated comparator whom he alleges was treated differently. Accordingly, Plaintiff's equal protection claim fails as a matter of law and must be dismissed.

### 7. Plaintiff's Remaining Section 1983 Claim Against Rickenbach Is Dismissed

"It is well-settled in [the Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

*Middleton*, 2006 WL 1720400, at *13 (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (internal quotation marks omitted, alteration in the original). Moreover, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). The Village Defendants argue that there are no factual allegations setting forth the personal involvement of Rickenbach with respect to Plaintiff's claim for false arrest, the only remaining Section 1983 claim before the Court.[15]

Plaintiff alleges that Rickenbach was elected mayor and trustee of the Village, was the "highest ranking member of the Village," was "responsible for [the Village's] administration and operation," and was a "policymaker for the Village." (Compl. ¶ 11.) Plaintiff further alleges that he wrote two separate letters to the Village Board of Elders, one of which was specifically addressed to Rickenbach, "informing [them] of all of the violations of the Village's rule and procedures that Larsen had engaged in . . . ." (*Id.* ¶¶ 43, 49.) Additionally, Plaintiff sent a letter to Rickenbach "questioning why he was being harassed by Larsen and members of the Village Police Department." (*Id.* ¶ 55.) Plaintiff contends that Rickenbach "failed to resolve Plaintiff's complaints." (Pl.'s Opp'n Vill. at 18.) The Village Defendants contend that "Plaintiff does not make one factual allegation in the complaint attributing any specific act to Rickenbach undertaken in violation of any constitutional right of the plaintiff," and contends that "the claim against Rickenbach is redundant, as it is nothing more than a Monell claim against the Village,

---

[15] The Court notes that the Village Defendants have not moved for dismissal of Plaintiff's claims based upon violations of his substantive due process and Sixth Amendment rights. (*See* Compl. ¶¶ 86, 88.) Therefore, the Court will not address (and expresses no opinion) whether the Complaint sufficiently alleges Rickenbach's personal involvement in these alleged Section 1983 violations.

warranting dismissal."  (Vill. Reply Mem. at 7-8.)

Plaintiff's claims against Rickenbach in his official capacity are "essentially a suit against the government entity itself," and should be dismissed.  *See Vassallo*, 591 F. Supp. 2d at 202 n.24 ("Likewise, with regard to the individual defendants, to the extent they are being sued in their official capacities, the claims against them are duplicative of the *Monell* claim against the District."); *Obilo*, 2003 WL 1809471, at *12.  Moreover, the Court finds Plaintiff's factual allegations regarding Rickenbach fail to adequately alleged the requisite "personal involvement" to hold Rickenbach liable in his individual capacity for Plaintiff's alleged false arrest.

The case of *Middleton v. City of New York*, 2006 WL 1720400 (E.D.N.Y. June 19, 2006), is helpful to this analysis.  There, the plaintiff alleged that he had written a letter to the commanding officer inspector of the New York City Police Department notifying him that a certain detective was not following proper police procedures.  *Id.* at *13.  The plaintiff also wrote several letters to New York Police Commissioner Raymond Kelly on which he copied the defendant commanding officer inspector.  When the Plaintiff filed a subsequent Section 1983 lawsuit, however, the "only allegations regarding [the defendant commanding officer inspector] appear[ed] to be for a failure to supervise."  *Id.*  The court found that "the receipt of these letters and lack of response does not demonstrate personal involvement by [the defendant commanding officer inspector] in the alleged constitutional deprivation.  *Id.* (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)) (finding that the "plaintiff's two letters and the supervisor's response '[did] not demonstrate the requisite personal involvement' by the supervisor" to sustain Section 1983 claims against him).

Here, as in *Middleton*, the only factual allegations regarding Rickenbach involve his

receipt of letters from Plaintiff and his alleged failure to address them to Plaintiff's satisfaction. These allegations are insufficient to set forth the requisite personal involvement to maintain a Section 1983 claim against Rickenbach. Accordingly, Plaintiff's Fourth Amendment false arrest claim, brought pursuant to Section 1983, is dismissed as against Rickenbach.

### 8. Plaintiff's Remaining Section 1983 Claim Against the Village is Dismissed

Plaintiff alleges that the Village "is liable for its employees' deprivation of Plaintiff's rights" because: (1) "such acts were taken in accordance with the Village's custom or practice of violating Plaintiff's rights," (2) "these practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers," and (3) "the individual policymakers directly participated in and/or tacitly condoned the violation of Plaintiff's rights." (Compl. ¶ 89.) The Village Defendants move to dismiss any Section 1983 claim against the Village, arguing that because Plaintiff "did not suffer a constitutional violation as a result of the actions of the members of the VILLAGE police department, any alleged VILLAGE policy or practice could not have caused WOOD's emotional harm." (Vill. Defs.' Mem. at 16.) According to the Village Defendants, "[a] municipality cannot be held liable for failure to supervise or inadequate training when the officers did not violate plaintiff's constitutional rights." (*Id.*) Plaintiff does not address the Village Defendants' argument to dismiss his Section 1983 municipal liability claims against the Village.

As noted above, the Court has dismissed each of Plaintiff's claims under Section 1983 with the exception of Plaintiff's false arrest claim. Therefore, the Court will examine whether Plaintiff has adequately pled a municipal liability claim solely as to Plaintiff's claim for false arrest. *See Vassallo*, 591 F. Supp. 2d at 202 (dismissing Section 1983 claim against municipality

41

when the court found that, as a matter of law, no constitutional violation had been committed by the individual defendants).

> a.    *Legal Standard*

A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations.  *See Monell v. N.Y. City Dep't of Soc. Services*, 436 U.S. 658, 691 (1978); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).  A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through official decision making channels."  *Monell*, 436 U.S. at 690-91.  Accordingly, in order to bring a Section 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy.  *Id.*; *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The existence of a municipal policy or custom may be pled in any of four ways.  A plaintiff may allege that his constitutional injuries arose from: "(1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure

by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Williams*, 428 F. Supp. 2d at 159 (citing *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)); *see also Bonds v. Suffolk Cnty. Sheriff's Dep't*, 2006 WL 3681206, at *2 (E.D.N.Y. Dec. 5, 2006) (same); *Peterson v. Tomaselli*, 2004 WL 2211651, at *9 (S.D.N.Y. Sept. 30, 2004) (same).

> b. *Application*

> > i. Plaintiff Has Not Alleged the Existence of a Policy, *Custom, or Practice of Violating His Rights*

The Complaint avers that the Village is liable for Plaintiff's alleged false arrest because the actions of its employees "were taken in accordance with the Village's custom or practice of violating Plaintiff's rights . . . [and] these practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers." (Compl. ¶ 89.) It is clear that Plaintiff is not alleging the existence of a formally adopted policy of the Village. Rather, Plaintiff appears to allege that his constitutional injuries were caused by a widespread custom or practice in the Village Police Department of abusing Plaintiff, specifically.

*Birmingham v. Ogden*, 70 F. Supp. 2d 353 (S.D.N.Y. 1999), a case with a somewhat similar factual pattern to the instant case, is instructive on this point. The plaintiff in *Birmingham*, a lieutenant on the City of Middletown's police force, expressed numerous unfavorable opinions to the defendant police chief regarding the inefficiencies of police department operations. *Id.* at 358. In order to "shut[ the plaintiff's] mouth," the defendant and two other lieutenants on the police force "coerced plaintiff's wife – with whom he was negotiating the terms of an unfriendly divorce – into filing a false criminal complaint against [the

plaintiff]." *Id.* The defendant police chief brought the plaintiff up on disciplinary charges based upon this false criminal complaint and, after appearing before the Board of Police Commissioners, plaintiff was dismissed from the police force. *Id.* at 359.

The court in *Birmingham* dismissed the plaintiff's *Monell* claim against the City, finding as follows:

> Here, the only fair inference is that what happened to plaintiff (assuming things occurred as he claims) was unique to him – a deeply personal vendetta carried out by persons who were out to get him. That is not municipal action taken pursuant to policy or practice – unless plaintiff were to present this court with evidence that Chief Ogden and Mayor DeStefano and their cronies make it a practice to cook up disciplinary charges against outspoken police officers in order to procure their dismissal. There is no such evidence in the record before this court.

*Id.* at 373.

The Court applies the reasoning set forth in *Birmingham* with equal force to this case. Here, Plaintiff has alleged a set of factual circumstances that are certainly unique to him. In essence, he alleges that Larsen began having an affair with Plaintiff's wife and, subsequently, Plaintiff complained to the Village regarding Larsen's alleged misuse of Village Police Department time and government-issued vehicle. Plaintiff further alleges that, in retaliation, Larsen attempted to intimidate, harass, and generally make trouble for Plaintiff. According to Plaintiff, Larsen and the other individual defendants, including Galeano – a police officer beholden to Larsen for saving his career – filed or allowed to be filed a Misdemeanor Information containing false information that led to Plaintiff's arrest. This conduct does not constitute a municipal policy, custom or practice sufficient to hold the Village liable under Section 1983. As in *Birmingham*, Plaintiff has not alleged (and, most likely, cannot allege) that

the Village Police Department has a custom or practice of allowing its police officers to harass, falsely arrest and generally carry out vendettas against those with whom they have personal disagreements.

Accordingly, Plaintiff's *Monell* claim against the Village cannot stand on Plaintiff's allegations of the existence of a policy or custom.[16]  *See Johnson v. New York*, 21 Fed. Appx 41, 2001 WL 1205363, at *2 (2d Cir. Oct. 10, 2001) (noting that even assuming the truth of the plaintiff's claims that a child support enforcement unit's "attorney improperly coerced a judge into participating in a vendetta against [him] . . . nothing in [plaintiff's] complaint alleges such acts were done in accordance with municipal policy or custom"); *Bloom v. Town of Stratford*, 2006 WL 3388396, at *12 (D. Conn. Nov. 16, 2006) (dismissing Section 1983 claim against town when plaintiff's theory that the town ratified and became "complicit" in town employee's personal vendetta against plaintiff was "not founded on any evidence of such a policy or custom"); *Aguilera v. County of Nassau*, 425 F. Supp. 2d 320, 324 (E.D.N.Y. 2006) (finding "the complaint alleges no facts from which it can be inferred, even circumstantially, that a County custom or policy" caused the alleged constitutional violation when the only factual allegations described "the isolated events" relating to plaintiff); *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 401 (S.D.N.Y. 2005) ("[O]ne man's experience does not make a policy."), *aff'd in part, vacated on other grounds*, 2007 WL 247728 (2d Cir. Jan. 25, 2007).

---

[16]     The Court further notes that Plaintiff has not alleged that the Village failed to train its Police officers, another possible ground on which to base a claim for municipal liability. *See Sylla v. City of New York*, 2005 WL 3336460, at *6 (E.D.N.Y. Dec. 8, 2005).  Nor can the Complaint be read to contain such an allegation because Plaintiff would have had to "not only allege a failure to train, but that there exists 'a deliberate [Village] policy of failing to train its police officers in how to act with [particular] individuals.'" *Id.* (quoting *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003)) (first alteration added).  No such allegations exist in the Complaint.

The Complaint also avers that "individual policymakers directly participated in and/or tacitly condoned the violation of Plaintiff's rights." (Compl. ¶ 89.)  Plaintiff alleges that Rickenbach, Larsen, Tracey, Schneider, and Galeano are all "policymaker[s] for the Village with respect to the wrongful acts alleged herein," and are "charged with the responsibility of ensuring that employees and citizens are not subjected to unconstitutional practices." (*Id.* ¶¶ 11–15.)

"[M]erely asserting that an official has 'discretion in the exercise of particular functions' is not sufficient to impose municipal liability." *Peterson*, 2004 WL 2211651, at *9.  Moreover, even if a municipal employee is considered a "policy maker," that employee "must be responsible for establishing *final government policy* respecting the particular activity before the municipality can be liable." *See Birmingham*, 70 F. Supp. 2d at 374 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  "Whether an official has final *policymaking* authority is a question of state law." *Id.*; *Moran v. City of New Rochelle*, 346 F. Supp. 2d 507, 516 (S.D.N.Y. 2004) ("Whether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law.").  However, the Complaint does not allege (and Plaintiff does not address in his opposition papers) whether any of the individual Village Defendants have "final policymaking authority" with respect to decisions about arresting individuals for misdemeanors, such as Obstructing Governmental Administration in the second degree.  Plaintiff's mere assertions that the individual Village Defendants are "policymakers" is not sufficient for liability to attach to the Village under *Monell*.  *See Birmingham*, 70 F. Supp. 2d at 374.

Accordingly, Plaintiff's Fourth Amendment false arrest claim, brought pursuant to

Section 1983, is dismissed as against the Village.

**C.    *Plaintiff's Conspiracy Claim Pursuant to 42 U.S.C. § 1985 is Dismissed***

Plaintiff alleges that "the Defendants, or any of them, conspired together either by express understanding or tacit agreement for the purpose of denying Plaintiff the aforementioned constitutional rights," in violation of 42 U.S.C. § 1985 ("Section 1985").  (Compl. ¶ 94.)

To state a cause of action under Section 1985, a plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). The conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Id.* (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995)) (internal quotation marks omitted).  "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)) (internal quotation marks omitted).

The Village Defendants and Larsen assert that Plaintiff's Section 1985 claim should be dismissed because Plaintiff "cannot establish a claim for false arrest, malicious prosecution or a violation of his equal protection rights."  (Vill. Defs.' Mem. at 15.)  In addition, the Village Defendants and Larsen contend that the allegations in the Complaint that Plaintiff and Larsen "were vying for the affections of the same woman, and were therefore 'bitter enemies' does not

give rise to an assumption that the other Village defendants were engaged with Larsen in a conspiracy against [Plaintiff]."  (Vill. Reply Mem. at 8-9.)  Finally, the Village Defendants and Larsen assert that Plaintiff's Section 1985 claim must "fail due to the intracorporate conspiracy doctrine."  (*Id.* at 9.)  In opposition, Plaintiff contends that "the Complaint contains many allegations from which one could infer the existence of a conspiracy," and "[t]he fact that it is not alleged that a specific meeting took place or when this meeting occurred is not fatal to Plaintiff's claim."  (Pl.'s Opp'n Vill. at 19.)  Plaintiff asserts that he has alleged the existence of a sufficient "tacit understanding among the alleged co-conspirators in order to survive Defendants' motion."  (*Id.* at 20.)

The Court need not address these contentions, however, because Plaintiff's Section 1985 claim must be dismissed for failure to allege an essential element.  As noted above, "a conspiracy is actionable under § 1985 only if it involves a discriminatory animus based on race or some other invidious classification."  *Posr*, 180 F.3d at 419 (citing *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).  Plaintiff has not alleged the existence of any racial or other class-based animus.  Accordingly, Plaintiff's Section 1985 claim is dismissed.  *See id.* (dismissing Section 1985 claim when plaintiff "does not allege facts sufficient to support a conclusion of race-based animus); *Middleton*, 2006 WL 1720400, at *9 (dismissing Section 1985 cause of action when plaintiff "does not attempt to allege racial or other discriminatory animus behind the alleged conspiracy"); *Williams*, 428 F. Supp. 2d at 160 (dismissing Section 1985 claim when plaintiff "makes no allegation regarding class membership").

### D. *Plaintiff's Claim Pursuant to 42 U.S.C. § 1986 ("Section 1986") is Dismissed*

It is well-established that a violation of Section 1986 is predicated on a violation of

Section 1985, since the former provides a remedy for the latter. *See Talley v. Brentwood Union Free Sch. Dist.*, 2009 WL 1797627, at *9 (E.D.N.Y. June 24, 2009) (citing *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim . . . ."). Because the Court has dismissed Plaintiff's Section 1985 claim, his Section 1986 claim must fail as well. *See Posr*, 180 F.3d at 419; *Sylla*, 2005 WL 3336460, at *7 ("Where plaintiff fails to state a viable § 1985 claim, he cannot state a claim under § 1986.").

E.   ***Plaintiff's State Law Claims for False Arrest and Intentional Infliction of Emotional Distress are Dismissed***

In addition to the federal claims described above, the Complaint sets forth state law causes of action for false arrest, malicious prosecution, and intentional infliction of emotional distress. (Compl. ¶¶ 96–100.) As discussed in Section I.B.4, above, Plaintiff's claims for malicious prosecution under either Section 1983 or New York common law are dismissed for failure to state a claim.

The Village Defendants and Larsen argue that Plaintiff's state law claim for intentional infliction of emotional distress must also be dismissed because Plaintiff failed to serve a notice of claim upon the Village pursuant to New York General Municipal Law § 50-i(1). (*See* Vill. Defs.' Mem. at 17.) Although not specified by the Village Defendants or Larsen, the Court presumes this argument would also apply to Plaintiff's state law claim for false arrest.

The Complaint avers as follows:

> Plaintiff has or is about to file a motion with the New York State Supreme Court, County of Suffolk for permission to file a Notice of Claim on the Village of East Hampton pursuant to N.Y. General Municipal Law § 50-e(5) so that this Court may exercise jurisdiction to hear Plaintiff's claims under the laws of New York State that are contained herein pursuant to 28 U.S.C. § 1367.

49

(Compl. ¶ 4.) Plaintiff contends that "Plaintiff brought a proceeding in State Supreme Court requesting permission to serve the Defendant Village with a late notice of claim pertaining to this action." (Pl.'s Opp'n Vill. at 20.) Further, Plaintiff asserts that because "[t]he petition is still pending," the Court "should reserve decision on dismissing [the state law] claim[s] until the Supreme Court renders its decision." (*Id.*)

New York's General Municipal Law provides, in relevant part:

> No action . . . shall be prosecuted or maintained against a . . . village . . . for personal injury . . . alleged to have been sustained by reason of negligence or wrongful act of such . . . village . . . or of any officer, agent or employee thereof . . . unless . . . a notice of claim shall have been made and served upon the . . . village . . . in compliance with section fifty-e of [the New York General Municipal Law].

N.Y. Gen. Mun. Law § 50-i(1). Section 55(e) of the New York General Municipal Law, in turn, provides:

> In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action . . . against a public corporation . . . or any officer, appointee or employee thereof, the notice of claim . . . shall be served . . . within ninety days after the claim arises . . . .

N.Y. Gen. Mun. Law § 50-e(1)(a).

The Complaint makes clear, and Plaintiff concedes, that Plaintiff did not serve a timely notice of claim upon the Village as was required under New York law. It is well-settled that "[a]s a condition precedent to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, New York General Municipal Law section 50-e requires plaintiffs to file a notice of claim within ninety days after the claim arises." *Olsen v. County of Nassau*, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008); *see also Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 428 (S.D.N.Y. 2002) ("In any action against a municipal

50

employee, the claimant must serve a notice of claim on the municipal employer . . . .").  Here, because Plaintiff has failed to meet this condition precedent, Plaintiff's state law claims for false arrest and intentional infliction of emotional distress must be dismissed.  *See Dzwonczyk v. Syracuse City Police Dep't*, 2008 WL 5459147, at *16 (N.D.N.Y. Dec. 22, 2008) (dismissing intentional infliction of emotional distress claim); *Brogdon*, 200 F. Supp. 2d at 428 (dismissing false arrest claim); *Perez v. County of Nassau*, 294 F. Supp. 2d 386, 391 (E.D.N.Y. 2003) (dismissing false arrest claim when "plaintiffs failed to affirmatively plead that they filed a notice of claim as required when bringing a tort claim against a municipality or any of its officers")

The Court's decision is not swayed by Plaintiff's contention that the Court ought to reserve decision on this portion of the motion to dismiss during the pendency of his application to serve a late notice of claim in New York Supreme Court.[17]  When a plaintiff does "not meet the statutory pleading requirements at the time of filing," his state law claims must be dismissed.  *See Dingle v. City of New York*, 2010 WL 2976521, at *11 (S.D.N.Y. July 28, 2010) ("By filing a Notice of Claim midway through the pleadings, Dingle . . . failed to comply with New York State's statutory requirements.").  The correct remedy, therefore, is dismissal and not, as Plaintiff suggests, to reserve decision pending the outcome of the state court's decision.  *See id.*  However, this dismissal of Plaintiff's state law false arrest and intentional infliction of emotional distress claims is without prejudice.  Should the state court grant Plaintiff permission to file a

---

[17]     It is well-settled that this Court does not have jurisdiction to grant permission to serve a late notice of claim – such an application may be made only to the state court.  *See Bunim v. City of New York*, 2006 WL 2056386, at *1 n.2 (S.D.N.Y. July 21, 2006) (noting that applications for permission to serve a late notice of claim must be made in state court and "this Court does not have jurisdiction to decide whether Plaintiffs may file late Notices of Claim").

late notice of claim, Plaintiff may renew his state law false arrest and intentional infliction of emotional distress causes of action subject to any possible additional arguments then available to defense counsel. *See Dzwonczyk*, 2008 WL 5459147, at *18 ("Accordingly, Plaintiff's claim of IIED against the John Doe County Defendants is dismissed without prejudice to renew upon the filing of a notice of claim pursuant to New York General Municipal Law section 50-e.").

**F.** **Plaintiff's Claims Under the Constitution of the State of New York Are Dismissed**

Although not specifically mentioned by the Village Defendants or Larsen, the portions of the Complaint challenged by the instant motions to dismiss include claims under the Constitution of the State of New York. Specifically, Plaintiff asserts claims under Article I, §§ 8 and 9 (retaliation for the exercise of Plaintiff's free speech rights and violation of his right to intimate association), Article I, § 11 (equal protection), and Article I, § 12 (false arrest).

Plaintiff's claims under the New York State Constitution Article I, §§ 8, 9, and 11 are dismissed for the same reasons as Plaintiff's First Amendment and equal protection claims described above – namely, Plaintiff has failed to adequately plead such claims. *See Williams*, 428 F. Supp. 2d at 160 (dismissing Section 1983 equal protection claim and corresponding claim under the New York State Constitution); *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999) ("[T]he conclusion . . . that the plaintiffs' federal equal protection . . . rights were not violated dictates the conclusion that the plaintiffs' parallel rights under the state constitution were also not infringed.").

Plaintiff's false arrest claim under Article I, § 12 must also be dismissed because the New York State Constitution "is unavailable where an alternative remedy will adequately protect the interests at stake." *Coakley*, 49 F. Supp. 2d at 628-29. Where, as here, a plaintiff has asserted a

viable Fourth Amendment claim for false arrest under Section 1983 "any vindication of the plaintiff['s] right to be free of unreasonable searches and seizures can be vindicated through this claim." *Id.* at 629. Therefore, "it follows that the plaintiffs have no private right of action under the state constitution." *Id.*; *see also Vilkhu v. City of New York*, 2008 WL 1991099, at *9 (E.D.N.Y. May 5, 2008) (dismissing false arrest claims made pursuant to the New York State Constitution when plaintiff pled viable false arrest claim under Section 1983).

For these reasons, Plaintiff's claims under Article I, §§ 8, 9, 11, and 12 of the Constitution of the State of New York are dismissed.

## CONCLUSION

For the foregoing reasons, the Village Defendants' motion to dismiss the Complaint and Larsen's motion for judgment on the pleadings are GRANTED in part and DENIED in part. The motions are GRANTED to the extent that: (1) Plaintiff's First Amendment retaliation and intimate association claims, and Fourth Amendment malicious prosecution claim, brought pursuant to Section 1983, are dismissed in their entirety; (2) Plaintiff's Fourth Amendment false arrest claim, brought pursuant to Section 1983, is dismissed as against Rickenbach, the Village, and Larsen, Tracey, Schneider, and Galeano in their official capacities only; (3) Plaintiff's Section 1985 and 1986 claims are dismissed in their entirety; (4) Plaintiff's state law claims for malicious prosecution, false arrest, and intentional infliction of emotional distress are dismissed in their entirety; and (5) Plaintiff's claims made pursuant to the Constitution of the State of New York are dismissed in their entirety.

The portion of the Village Defendants' and Larsen's motions to dismiss Plaintiff's Fourth Amendment false arrest claim, brought pursuant to Section 1983, against Larsen, Tracey,

Schneider, and Galeano in their individual capacities is DENIED.


**SO ORDERED.**


Dated: September 30, 2010
      Central Islip, New York

                                   /s/ _____
                                   Denis R.  Hurley
                                   Senior District Judge